IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

MARCH 1997 SESSION

FILED

October 16, 1997

Cecil W. Crowson
Appellate Court Clerk

STATE OF TENNESSEE,            )
                              )
        Appellee,             ) C.C.A. No. 01C01-9605-CC-00209
                              )
VS.                           ) Coffee County
                              )
MARK T. SCISNEY,              ) Hon. Gerald L. Ewell, Sr., Judge
                              )
        Appellant.            ) (DUI While Driving Commercial Vehicle)

**DISSENTING OPINION**

My learned colleague, Judge Woodall, presents an excellent, comprehensive analysis of the law relating to blood alcohol concentrations; however, I respectfully disagree with the conclusion that an Intoximeter 3000 reading of .04, which can result from actual concentrations ranging from .035 to .054, is sufficient to establish beyond a reasonable doubt a violation of the .04 statute. I agree with Judge Tipton's conclusion that the Intoximeter 3000 reading of .04 is insufficient, by itself, to prove beyond a reasonable doubt that the defendant was driving with a .04 blood alcohol concentration; however, I respectfully disagree with the conclusion that this reading, combined with other evidence in this case, is sufficient to establish guilt.

The analysis of Tenn. Code Ann. 55-50-408 is simple from my perspective. A violation of this statute requires "a blood alcohol concentration of point zero four (.04) or more..." We should look to the statute itself and rely, when possible, upon the ordinary meaning of its language and terms used, refraining from any forced or subtle construction to limit or extend the statute's meaning. State v. Smith, 893 S.W.2d 908, 917 (Tenn. 1994), *cert. denied* 116 S.Ct. 99, 133 L.Ed. 2d 53 (1995).

The state's expert witness testified that the acceptable tolerance of the Intoximeter 3000 is plus or minus .005. Therefore, as Judge Woodall correctly concedes, a .04 reading could result from an actual blood alcohol concentration ranging from .035 to .054.[1] In other words, there is a twenty-five percent (25%)

---

[1] In fact, the October 25th .025 standard test on this machine read high.

statistical chance this defendant had an actual blood alcohol concentration below .04. To me, .04 means .04 and not .039 or below. Considering the tolerance, it is simply impossible to conclude beyond a reasonable doubt that the defendant had an actual blood alcohol concentration of .04 or more.

This scenario is no different than placing twenty (20) people in a room, fifteen (15) of whom are named "John" and five (5) of whom are named "Joe." A random selection of one of those persons could not establish beyond a reasonable doubt that such person's name is "John" simply because there is a seventy-five percent (75%) statistical probability that his name is "John." "Reasonable doubt" is simply not subject to such a mathematical analysis.

The concurring opinion concludes that evidence that defendant had a couple of tall beers in Georgia several hours earlier, smelled of alcohol upon his arrest in Coffee County, and was properly administered the intoximeter test, coupled with the reading of .04, is sufficient to establish beyond a reasonable doubt that the defendant had an actual blood alcohol concentration of .04 or more. I am unable to make such a leap. The record does not suggest that such facts make the defendant any more or less likely to have a reading of .04 or more as opposed to .039 or less.

Defendant has lost in a game of chance. At best, we can say the "odds are" that he was .04 or more. "Odds are" is insufficient to establish proof beyond a reasonable doubt. I respectfully dissent.

_____

JOE G. RILEY, JUDGE

2